### Dyson v. City of Philadelphia

*Bennett G. Picker,* for plaintiff.

*James J. Kerwick,* Assistant City Solicitor, for defendant.

HIRSH, J., April 9, 1973.—This matter is before this court on a complaint in equity, (1) to enjoin and restrain all defendants from paying funds to any heirs of Patrolman Reynolds other than plaintiff and to order that distribution be made to plaintiff, and (2) to grant such other relief as it shall deem necessary and proper.

The pleadings consist of the complaint in equity, a memorandum of law in support of the complaint in equity, a memorandum of law of defendant, Bertha Browne Reynolds, and a stipulation of facts.

The issue raised is whether an illegitimate child, who has been acknowledged by the father in a paternity suit as his child, is entitled to the benefits of a child under the City of Philadelphia Retirement System Ordinance, section 209.2.

## FINDING OF FACT

This court finds as a matter of fact that Charles Robert Reynolds was employed by the Philadelphia Police Department as a patrolman and that he died October 26, 1969, as a result of a gunshot wound received while on duty. At his death, Patrolman Reynolds was single but he had a son, Calvin Charles Dyson, by Hibernia Dyson. This court makes this conclusion about the paternity of Calvin Charles Dyson from the notes of testimony in Commonwealth v. C. Robert Reynolds, County Court of Philadelphia, no. 59402, in which the Hon. Benjamin W. Schwartz ruled that "the defendant admits paternity." Pursuant to the order of that court, Patrolman Reynolds made payments for the support of this child during his lifetime. In accordance with section 209.2 of the Retirement System Ordinance of the City of Philadelphia, the City Board of Pensions presently holds and controls funds which are to be distributed to the heir or heirs of Patrolman Reynolds.

## DISCUSSION OF FACTS AND LAW

Plaintiff, as guardian for her minor son, is seeking to force the City Board of Pensions to declare that Calvin Charles Reynolds is the child of Patrolman Reynolds and is thereby entitled to pension benefits as a child under section 209.2 of the City of Philadelphia Retirement System Ordinance. Defendant, Bertha Browne Reynolds, does not take issue with the facts except for those which relate to the problem of paternity. Specifically, defendant claims that the pension plan provisions which grant benefits to children apply only to legitimate issue, and give no benefit rights to illegitimate ones. If this court accepts this interpretation, then Patrolman Reynolds' mother would be entitled to the benefits. This court cannot agree with this interpretation and must agree with plaintiff in accordance with recent decisions of the United States Supreme Court.

In Frazier v. Oil Chemical Co., Inc., 407 Pa. 78 (1962), the Pennsylvania Supreme Court looked at the problem of the rights of the illegitimate and concluded that such children do not have a right to share in the recovery of damages for the death of their father in an action instituted under the survival and wrongful death statutes. This traditional view of the rights of illegitimates, however, was not accepted by the United States Supreme Court in recent cases in which illegitimates raised constitutional objections based on the equal protection clause of the Fourteenth Amendment.

In Weber v. Aetna Casualty & Surety Co., 40 L.W. 4460 (1972), the United States Supreme Court reviewed its recent decisions on the rights of illegitimates and concluded that "dependent unacknowledged, illegitimate children" can recover under Louisiana's workmen's compensation laws for the death of their natural father. Louisiana in its defense made

many of the same arguments which are presented here by Patrolman Reynolds' mother. Specifically, both pointed to the intestacy laws of their respective States and noted that in the event of intestacy, illegitimate children cannot take equally with legitimate children from their natural fathers. In fact, in Pennsylvania an illegitimate child is only an heir of the natural mother. Also, both claimed that any rights granted to the illegitimate child will upset the intimate family relations which our society values. Furthermore, both raise the specter of suits by illegitimate children trying to grab some of the spoils after the death of the purported natural father. In the Weber case, the Supreme Court rejected all of these arguments and this court accordingly also does so.

In its decision in Weber, the United States Supreme Court set forth the test for evaluating the validity of State statutory classifications under the equal protection clause of the Fourteenth Amendment. First, the statutory classification must bear some rational relationship to a legitimate State purpose: Morey v. Doud, 354 U. S. 457 (1957); Williamson v. Lee Optical, 348 U. S. 483 (1955). Though the latitude given State economic and social regulations is necessarily broad, when State statutory classifications approach sensitive and fundamental personal rights as in this case, the United States Supreme Court exercises a stricter scrutiny: Brown v. Board of Education, 347 U. S. 483 (1954); Harper v. Virginia Board of Elections, 383 U. S. 663 (1966). "The essential inquiry in all the foregoing cases is, however, inevitably a dual one: What legitimate state interest does the classification promote? What fundamental personal rights might the classification endanger?": Weber, supra, page 4462.

In Weber, the United States Supreme Court found that protecting the legitimate family relationship and

protecting the family unit is a venerable State concern. But how can such a concern be achieved by denying a child, who had been acknowledged and accepted as his child by Patrolman Reynolds himself, pension benefits? In Weber, the United States Supreme Court concluded that the classification which distinguished legitimate from illegitimate children for workmen's compensation purposes did not have any relationship to the State's interest in preserving the family unit. Similarly, in this case, denying an illegitimate child pension benefits payable to decedent's children is not going to cause persons to shun illicit relations because one day an illegitimate child will not be able to reap the benefits of the pension of a natural father. Furthermore,

". . . visiting this condemnation on the head of an infant is illogical and unjust. Moreover, imposing disabilities on the illegitimate child is contrary to the basic concept of our system that legal burdens should bear some relationship to individual responsibility or wrongdoing. Obviously, no child is responsible for his birth and penalizing the illegitimate child is an ineffectual—as well as an unjust—way of deterring the parent": Weber v. Aetna Casualty & Surety Co., 40 L.W. 4460.

However, the Weber decision and the decision of this court must be distinguished from Labine v. Vincent, 401 U. S. 532 (1971). There, a substantial State interest, namely to provide for "the stability of . . . land titles and the prompt and definitive determination of the valid ownership of property left by decedents," justifies distinctions between legitimate and illegitimate children for intestacy purposes. Therefore, the United States Supreme Court, in spite of constitutional objections, upheld Louisiana's intestacy laws which bar an acknowledged illegitimate child

from sharing equally with legitimate children in a father's estate. In accordance with this distinction, this court makes a similar distinction between the Pennsylvania intestacy laws, which are therefore founded upon a legitimate State interest, and the City of Philadelphia's pension ordinance, which under defendant's interpretation would unconstitutionally discriminate against illegitimate children.

The remaining problem for this court's attention is the lurking problem with respect to the proof of paternity.

This problem is not lightly brushed aside by this court because it recognizes that one of the reasons for the common law doctrine that an illegitimate child is "nullius filius" is that such a doctrine avoids the problems of determining paternity after the purported father's death. Although the United States Supreme Court has carved out a special exception for intestacy laws in Labine, that court has not accepted finely carved distinctions of the equal protection clause of the Fourteenth Amendment for workmen's compensation actions (Weber v. Aetna Casualty & Surety Co., supra); survival and wrongful death actions (Glona v. American Guarantee & Liability Insurance Co., 391 U. S. 73 (1968), Levy v. Louisiana, 391 U. S. 68 (1968)); Social Security claims (Davis v. Richardson, 342 F. Supp. 588, 34 L.Ed. 2d 659 (1972)); and support payments (Gomez v. Perez, 41 L.W. 4174 (1973)); even though paternity issues lurk in the background of such actions. Similarly, this court does not feel that it can carve out a distinction for municipal pension payments, particularly on the facts before this court. This court takes particular note of the fact that Calvin Charles Dyson was adjudged to be the son of Patrolman Reynolds and that Patrolman Reynolds supported the minor plaintiff for one year before his sudden

death. Therefore, the specter of paternity problems does not exist under these facts. Consequently, this court sees no lurking problem which would operate as a shield to protect distinctions which the United States Supreme Court in its recent decisions has characterized as invidious discrimination.

Therefore, this court makes the following decree nisi based on the specific facts of this case, and on the recent decisions of the United States Supreme Court.

### DECREE NISI

And now, to wit, April 9, 1973, it is hereby decreed and adjudicated that:

1. Defendants are enjoined and restrained from paying funds to any heirs of Patrolman Reynolds other than to plaintiff as guardian for Calvin Charles Dyson; and

2. Calvin Charles Dyson shall receive a share equal to the share of a child as provided in the City of Philadelphia Retirement System Ordinance, section 209.2.